UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES STEWART, individually and as Successor in Interest to Decedent JAHMAL DERRICK STEWART, | No. 2:19-cv-01744-TLN-DB |
| Plaintiff, | **ORDER** |
| v. | |
| COUNTY OF YUBA, a municipal corporation; TAMARA PECSI, individually and in her official capacity as a deputy sheriff for the Yuba County Sheriff's Department; SCOTT JOHANNES, individually and in his official capacity as a deputy sheriff for the Yuba County Sheriff's Department; and DOES 1–50, inclusive, individually and in their official capacity as agents for the Yuba County Sheriff's Department, | |
| Defendants. | |

This matter is before the Court on Plaintiff James Stewart's ("Plaintiff") *Ex Parte* Application to Modify the Scheduling Order. (ECF No. 27.) Defendants County of Yuba ("County"), Tamara Pecsi ("Deputy Pecsi" or "Pecsi"), and Scott Johannes ("Deputy Johannes" or "Johannes") (collectively, "Defendants") filed an opposition (ECF No. 29), and Plaintiffs filed a supplemental declaration in support of their Application (ECF No. 30). For the reasons set forth herein, Plaintiff's Application is DENIED.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 2019, Decedent Jahmal Derrick Stewart ("Decedent"), a transient man, was approached by Deputy Johannes regarding an assault Decedent was suspected of being involved in earlier that day. (ECF No. 19 at 5.) Plaintiff alleges it was readily apparent Decedent was in the midst of a medical crisis at that time. (*Id.*) Johannes purportedly confronted Decedent aggressively and a physical altercation ensued between Johannes and Decedent. (*Id.*) During the altercation, Decedent reached for Johannes's service weapon, but never succeeded in removing it from Johannes's holster. (*Id.*) Nevertheless, Johannes screamed: "he has my gun!" (*Id.* at 6.) According to Defendants, a split second after Deputy Pesci heard Johannes state "he has my gun," she heard a gunshot. (*See* ECF No. 29 at 3.) At some point, Pecsi ran towards the scene with her service weapon drawn. (ECF No. 19 at 5–6.) Believing Johannes was losing a fight with Decedent, Pecsi shot and killed Decedent. (*Id.* at 6; ECF No. 29 at 3.)

On September 3, 2019, Plaintiff initiated this action against the County, asserting claims arising from the fatal police shooting of Decedent. (ECF No. 1.) The Court issued its initial Pretrial Scheduling Order on September 4, 2019. (ECF No. 3.) In relevant part, the Pretrial Scheduling Order set the following deadlines: (1) the deadline to file amended pleadings or add parties was 60 days from service of the complaint; (2) the discovery deadline was 240 days from the date upon which the last answer may be filed with the Court; (3) the expert witness discovery deadline was 60 days after the close of discovery; and (4) the dispositive motion deadline was 180 days after the close of discovery. (*See id.* at 2–4.)

On February 21, 2020, the parties submitted a stipulation to permit Plaintiff to file a First Amended Complaint ("FAC") to add Pesci, who was identified through the parties' initial disclosures as the deputy who discharged her service weapon against Decedent. (ECF No. 9.) The Court adopted the stipulation on February 24, 2020. (ECF No. 10.)

On November 16, 2020, the parties submitted a stipulation to permit Plaintiff to file a Second Amended Complaint ("SAC") to add Johannes, who was identified as an integral participant in the death of Decedent upon review of Defendants' investigatory records and the deposition of Johannes. (ECF No. 17.) While stipulating to add Johannes as a defendant, the

1  parties also expressly stipulated to the caveat that the Court's current Pretrial Scheduling Order
2  would not be impacted and Plaintiff would not be given another opportunity to depose Johannes.[1]
3  (*Id.* at 2–3.)  The Court adopted this stipulation on November 16, 2020.  (ECF No. 18.)
4  According to the parties, discovery closed on November 18, 2020.  (*See* ECF No. 27 at 11; ECF
5  No. 29 at 3.)
6        On February 18, 2021, Plaintiff filed the instant *Ex Parte* Application, seeking to modify
7  the Pretrial Scheduling Order to reopen discovery.  (ECF No. 27.)  Specifically, Plaintiff seeks to
8  modify the discovery cutoff date from November 18, 2020 to April 19, 2021, and the dispositive
9  motion deadline from May 17, 2021 to July 19, 2021.  (*Id.* at 11.)  Defendants oppose the
10 Application.  (ECF No. 29.)

    **II.**    **STANDARD OF LAW**

        A.    <u>Ex Parte Relief</u>

13       In general, the Court will not grant *ex parte* relief unless "the moving party's cause will be
14 irreparably prejudiced if the underlying motion is heard according to regular noticed motion
15 procedures" and "the moving party is without fault in creating the crisis that requires ex parte
16 relief, or . . . the crisis occurred as a result of excusable neglect."  *Mission Power Eng'g Co. v.*
17 *Continental Cas. Co. (Mission Power)*, 883 F. Supp. 488, 492 (C.D. Cal. 1995); *see also Erichsen*
18 *v. Cty. of Orange*, 677 F. App'x 379, 380 (9th Cir. 2017) (affirming determination that moving
19 parties failed to meet the "threshold requirement" for *ex parte* relief because "they did not
20 establish they were 'without fault in creating the crisis that requires ex parte relief'").
21 ///
22 ///

---

[1] The parties never filed a joint status report specifying any proposed deadlines for the Court's Pretrial Scheduling Order, nor did they identify the dates referenced in their stipulation (*see* ECF No. 17 ¶ 8).  Applying the timeline set forth in the Court's Initial Pretrial Scheduling Order (ECF No. 3) to March 23, 2020, the date Defendants answered the FAC (ECF No. 16), the discovery cut-off deadline would be November 18, 2020, and the dispositive motion deadline would be May 17, 2021.  These dates appear to be confirmed, albeit circuitously, in Plaintiff's *Ex Parte* Application (*see* ECF No. 27 at 11), where they are mentioned for the first time in any of the parties' filings.  Nonetheless, in adopting the parties' stipulation (ECF No. 18), the Court also approved the incorporation of these deadlines into its Pretrial Scheduling Order.

B.      Modification of Scheduling Order

Under Federal Rule of Civil Procedure ("Rule") 16, the Court is required to issue a scheduling order as soon as practicable, and the order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once a scheduling order has been filed pursuant to Rule 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). A court may modify the schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing *Johnson*, 975 F.2d at 609). However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609 (compiling cases). Thus, if the party seeking the modification "was not diligent, the inquiry should end." *Id.*

**III.    ANALYSIS**

In the instant Application, Plaintiff seeks to modify the Pretrial Scheduling Order to reopen discovery for the "limited" purpose of obtaining discovery related to Johannes's "unauthorized modifications of his safety holster (with the intent to utilize it to draw his firearm quicker), and potential modification of the trigger pull on his department issued firearm (with the intent to fire said weapon quicker)." (ECF No. 27 at 1–2.) However, Plaintiff has not satisfied the requirements to bring this Application *ex parte*. *Mission Power*, 883 F. Supp. at 492; *Erichsen*, 677 F. App'x at 380.

As to the first requirement, Plaintiff argues he will be irreparably prejudiced if discovery is not reopened because the modification of Johannes' service weapon "factors heavily" into Defendants' theory of defense and "is crucial to Plaintiff's case." (ECF No. 27 at 6.) But apart from these conclusory assertions, Plaintiff fails to explain or provide any evidence demonstrating how the issue of Johannes's modified service weapon and holster is relevant to the instant case. Indeed, this issue appears largely tangential where Plaintiff's own expert maintains his opinion that Decedent never pulled Johannes's gun out of the holster, and where Pecsi — not Johannes —

is the officer that shot and killed Decedent. (*See* ECF No. 29 at 7.) As such, reopening discovery to permit Plaintiff to pursue nine broad areas of inquiry purportedly related to this matter, including multiple depositions of new persons most knowledgeable ("PMKs") and a second deposition of Johannes, does not appear to be warranted.[2] Rather, to permit such discovery seems unfairly prejudicial to Defendants, who would not only bear the entire burden of production, but would also be denied the benefit of their prior stipulation. (*See* ECF No. 17 at 2–3 (permitting Plaintiff to file a SAC to add Johannes as a defendant, with the express caveat that the Pretrial Scheduling Order deadlines would remain intact and Plaintiff would not seek to depose Johannes a second time)); *see also Johnson*, 975 F.2d at 609 (on motion to modify the schedule, the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion).

As to the second requirement, Plaintiff argues he is without fault in creating the crisis that required *ex parte* relief — or alternatively, committed excusable neglect — because he did not realize Johannes's holster and firearm had been modified until after February 3, 2021, when Defendants provided photographs of the holster and firearm to Plaintiff, and Plaintiff's police practices expert was able to recognize the modification from review of the photographs and so inform Plaintiff. (ECF No. 27 at 6, 8.) Moreover, Plaintiff claims Defendants purposely withheld this evidence until well after the discovery deadline had passed, despite it being implicated in Plaintiff's original discovery requests. (*Id.* at 7–8.)

In opposition, Defendants produce evidence that depicts a different timeline of events. Plaintiff's counsel initially contacted Defense counsel to coordinate an inspection of the gun and

---

[2] Specifically, Plaintiff states he intends to seek additional fact discovery related to: "1) the physical inspection of Defendant Scott Johannes' Gun and Holster; 2) the forensic lab written reports on Defendant Scott Johannes' Gun and Holster; 3) a deposition of lab technician(s) that physically inspected Defendant Scott Johannes' Gun and Holster; 4) a second deposition of Deputy Scott Johannes concerning said issues; 5) the deposition(s) of the PMK(s) regarding training and the authorized equipment on deputy duty belts as well as the required periodic inspections by supervisors; 6) a deposition of the Sheriff regarding how, when and why duty holsters are selected, authorized, inspected and provided to patrol deputies; 7) a List of all [Yuba County Sheriff's Department] authorized holsters; 8) all administrative memorandums regardless of any file number affixed regarding this incident; 9) Entire file (including interviews of Deputy Johannes regarding the alterations of his holster and the alleged 'crack'[])." (ECF No. 27 at 2).

holster for Plaintiff's expert on October 16, 2020, one month prior to the November 18, 2020 discovery deadline. (ECF No. 29 at 3; ECF No. 29-1 at 2, 8.) On October 21, 2020, Defense counsel replied that Defendants were working on how to coordinate an inspection of the gun and holster in evidence. (ECF No. 29 at 3; ECF No. 29-1 at 2, 7–8.) Plaintiff's counsel replied two days later that he would serve a subpoena "shortly." (ECF No. 29 at 3–4; ECF No. 29-1 at 2, 7.) In response, Defense counsel informed Plaintiff's counsel that the gun and holster could not be mailed to Plaintiff's expert due to chain of evidence purposes, but indicated "the County is fairly flexible on dates" for Plaintiff's expert to inspect the gun and holster at the Sherriff's Department and asked Plaintiff's counsel to provide dates of the expert's availability to coordinate a visit. (ECF No. 29 at 4; ECF No. 29-1 at 2–3, 6–7.) Thereafter, Defendants maintain that "[b]etween October 23, 2020 and February 1, 2021, Plaintiff's counsel never issued a subpoena for inspection of the gun and holster, never followed up with dates his expert was available to inspect [the gun and holster at the Sheriff's Department, and] never sent another email or phone call to [Defense counsel requesting] to inspect the gun and holster or to coordinate a time for inspection prior to discovery closing on November 18, 2020." (ECF No. 29 at 4; ECF No. 29-1 at 3.) Instead, on February 1, 2021 — two and a half months after the close of discovery — Plaintiff's counsel emailed Defense counsel to revisit the issue of inspecting the holster and requested photographs of the gun and holster. (ECF No. 29 at 4; ECF No. 29-1 at 3, 6.) Thus, Defendants did not provide the photographs until February 3, 2021, because Plaintiff did not request them until February 1, 2021. (*See id.*)

Defendants also dispute Plaintiff's accusation that they withheld evidence during discovery by failing to produce the photos with their original responses. Defendants maintain they provided "<u>the entire</u> investigation file into the officer involved shooting, totaling 815 pages" of documents to Plaintiff in response to his discovery requests on February 28, 2020. (ECF No. 29 at 3 (emphasis in original); ECF No. 29-1 at 2.) The photos Defendants provided to Plaintiff on February 3, 2021 did not exist during the officer-involved shooting investigation and did not exist during fact discovery. (ECF No. 29 at 4; ECF No. 29-1 at 3.) Rather, in response to a request for photos that Plaintiff submitted to Defendants on February 1, 2021, the Yuba County

Sheriff's Department took approximately 52 photographs of the holster and gun between February 1–3, 2021, and provided those photos as a good faith gesture to Plaintiff on February 3, 2021. (*Id.*)

The Court finds Defendants have the better argument. Plaintiff provides no justification for his failure to make an appointment to inspect Johannes's gun and holster in October 2020, nor does he offer any explanation for failing to revisit the issue until February 1, 2021, over two months after discovery closed.[3] Moreover, the Court finds Plaintiff's assertion that he did not realize he required discovery on the issue of Johannes's gun and holster until February 3, 2021, is belied by the fact that Plaintiff first requested to inspect the gun and holster in October 2020. In light of this record, the Court cannot conclude Plaintiff was without fault in creating the need to appear *ex parte*. *Erichsen*, 677 F. App'x at 380. For these reasons, Plaintiff has not satisfied the threshold requirements to bring this Application *ex parte*. *Mission Power*, 883 F. Supp. at 492; *Erichsen*, 677 F. App'x at 380.

Furthermore, for the same reasons discussed herein, the Court finds Plaintiff fails to demonstrate he acted with the requisite diligence to obtain the requested discovery prior to the discovery cutoff date. *Johnson*, 975 F.2d at 609; *Zivkovic*, 302 F.3d at 1087. Therefore, even if the Court permitted Plaintiff to bring this Application *ex parte*, Plaintiff cannot establish good cause to modify the Pretrial Scheduling Order pursuant to Rule 16. *See id.*

### IV.  CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's *Ex Parte* Application to Modify the Scheduling Order. (ECF No. 27.) The previously identified discovery and dispositive motions deadlines remain intact. The Court will set dates for trial and the pretrial

///

///

///

---

[3] Also inexplicable is the delay in time between February 28, 2020, when Defendants produced their investigation file, and January 18, 2021, when Plaintiff's expert first requested photos of Johannes' holster based on review of the file. (*See* ECF No. 27-2 at 2.)

7

conference upon expiration of the dispositive motion deadline or upon resolution of any dispositive motion, whichever occurs later.

     IT IS SO ORDERED.

DATED: March 8, 2021

                         Troy L. Nunley
                         United States District Judge